Ryan **GREKO**, individually and on behalf of all others similarly situated, Plaintiff,

v.

**DIESEL U.S.A., INC.**, a New York corporation; and Does 1–100, inclusive, Defendant.

No. C 10–02576 RS.

United States District Court, N.D. California, San Francisco Division.

Oct. 26, 2011.

Daniel L. Feder, The Law Offices of Daniel L. Feder, San Francisco, CA, for Plaintiff.

Harry Isaac Johnson, Mark Reed Phillips, Stanley G. Stringfellow, II, Arent Fox Llp, Los Angeles, CA, for Defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION FOR CLASS CERTIFICATION

RICHARD SEEBORG, District Judge.

### I. INTRODUCTION

Plaintiff Ryan Greko brings this putative class action against defendant Diesel U.S.A., Inc. (Diesel) for failure to pay overtime and minimum wages and for related claims under California law. Greko contends that the company misclassified him as an exempt employee during the time he worked as an assistant store manager (ASM) for the company.[1] Diesel now moves for summary judgment on the grounds that it properly classified Greko as an exempt employee under California law. Greko opposes the motion and instead moves for certification under Federal Rule of Civil Procedure 23(b)(3) for a class consisting of all California ASMs during the relevant period. For the reasons stated below, Diesel's motion for summary judgment is denied and Greko's motion for class certification is granted.

### II. BACKGROUND

Diesel is part of an Italian company with its United States corporate office in New York. The U.S. subsidiary operates a number of retail clothing stores in California. In November 2007, the company hired Greko as one of two ASMs for its "flagship" store on Post Street in San Francisco. Greko was classified as an exempt employee and received a starting salary of $40,000. In the summer of 2009, Diesel moved the San Francisco store to Market Street. Greko transferred to the new location and retained his position as ASM. According to Diesel's description of the position, the responsibilities of an ASM include "work[ing] with the Store Manager to achieve store sales and maximise profitability through effective management of store team and implementation of company programmes, policies and procedures." An ASM is required to take a "proactive approach to the business trends and needs" and to "act as a positive role model to store personnel." An ASM is also "responsible for continuously improving and developing specific management skills by taking ownership of the responsibilities assigned (i.e. Visual/Merchandising/Operations) by the Store Manager and assuming all Store Manager responsibilities in her/his absence." During his deposition, Greko testified that the job description was "accurate" with respect to the duties listed. He also indicated that the description was incomplete, as it did not include "selling" and other tasks he performed.

In September 2009, after Greko had been employed for almost two years, store manager Emily Socwell conducted a performance review. Socwell stated that she could count on Greko to "make decisions that have to do with employee performance issues and reviews and customer issues."[2] She commented that Greko "has shown he can manage a large staff by ensuring the daily focus [an employee assignment roster] is filled out effectively as well as making sure all staff is tasking or selling." Greko "had an active role in staffing the Post St. store ... and paid close attention to their performance to see who had the potential to move to the new location." Socwell also stated that Greko trained "all new hires in customer service," managed "most of the window installations

---

1. Greko brings eight claims for relief: (1) failure to pay all wages and overtime (Cal. Labor Code §§ 204, 510); (2) failure to pay minimum wages (Cal. Labor Code §§ 1182.12, 1194, 1194.2, 1197); (3) failure to pay wages on separation (Cal. Labor Code §§ 201, 202, 203); (4) failure to provide meal breaks and rest periods (Cal. Labor Code § 226.7); (5) failure to maintain accurate pay records (Cal. Labor Code § 226(a), (e) & (g)); (6) unfair business practices (Cal. Bus. & Prof.

Code § 17200 et seq.); (7) unjust enrichment; and (8) declaratory relief.

2. As the exhibit attached by Diesel is illegible, the comments from Greko's performance review are taken from Diesel's memorandum. In his Opposition, Greko does not dispute the accuracy of these excerpts.

and floor moves," and "enforce[d] all loss prevention policies and procedures." Greko indicated his agreement with Socwell's review at that time.

In January 2010, Socwell left her position as store manager. Until Diesel replaced the store manager, for approximately two months, Greko and his fellow ASM ran the store. During this period, Greko completed an "assistant management questionnaire" that his district manager requested. In that document, Greko listed his weekly responsibilities: "Payroll, Sales Results, Month End paperwork, Manage all Installs, Hiring Manager (New Hire Training, Interviews and Paperwork) and Mail Packs." He indicated that supervisors, sales, stock, cashier, and visuals reported to him.

After Greko's employment with Diesel was terminated in the spring of 2010, he posted a resume on the Internet site "monster.com." In the document, Greko describes his duties as ASM:

> Oversee all store operations in all departments from HR to Finance and Visual Merchandising, Monitor product flow and stock levels, LP audits, Analyze all store performance reports, React daily with merchandising directives, Payroll and store finances, Hiring, Terminations, and Reviews, Issue all documentation, Schedules, Plan and organize all product and training meetings, Supervise all new collection installations, Store merchandising and visual walkthroughs, Manage Inventory, Lead by example with a team of 30 in a flagship environment.

Greko testified that he honestly represented his skills and experience in resumes he prepared. He also testified that he spent the majority of his time "selling and trying to make money for the store." He estimated that he spent twenty to twenty-five percent of his time on managerial tasks during the time Socwell was his store manager.

## III. DISCUSSION

### A. *Diesel's Motion for Summary Judgment*

Under the Federal Rules of Civil Procedure, a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party must identify factual disputes that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Irrelevant or unnecessary factual disputes do not raise any genuine issue for trial. *Id.* To preclude entry of summary judgment, the nonmoving party must present sufficient evidence such that a jury could return a verdict in his or her favor. *Id.*

■ In California, an employee generally is entitled to receive overtime wages of one and one-half times his or her regular rate of pay for time worked in excess of forty hours per week or eight hours per day. *See* Cal. Labor Code § 510(a). Certain categories of employees are exempt from these provisions, including persons employed in an executive, administrative, or professional capacity. *Id.* at 515(a). In particular, the "executive exemption" applies to an employee:

> (a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and

> (b) Who customarily and regularly directs the work of two or more other employees therein; and

> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretion and independent judgment; and

(e) Who is primarily engaged in duties which meet the test of the exemption....

(f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment....

8 C.C.R. § 11070; California Industrial Welfare Commission Order No. 7–2001 ("Wage Order No. 7–2001"). As an affirmative defense, an employer bears the burden of demonstrating that an employee falls within the exemption. *See Ramirez v. Yosemite Water Co.*, 20 Cal.4th 785, 794–95, 85 Cal.Rptr.2d 844, 978 P.2d 2 (1999).

■ Diesel moves for summary judgment on the grounds that Greko was properly classified as an exempt employee pursuant to the executive exemption. While Greko contends that Diesel has not demonstrated any of the requirements, aside from the minimum salary,[3] he mainly disputes that he was "primarily" engaged in duties that meet the test of the executive exemption.[4] According to Wage Order No. 7–2001, the determination of whether an activity constitutes exempt or non-exempt work shall be consistent with regulations under the Fair Labor Standards Act including 29 C.F.R. section 541.102.[5] On his resume, Greko lists a number of responsibilities while he was employed at Diesel that apparently include exempt management duties under that regulation including, for instance, overseeing store operations, analyzing store performance reports, and partici-

pating in hiring, terminations, and reviews. In his performance review, Socwell praised Greko's abilities to make decisions regarding employee and customer issues and to manage a large staff. She credited him with taking an active role in staffing the Post Street store and determining which employees had the potential to move to the new location. During a two-month period when the San Francisco store was without a store manager, Greko and another ASM were the two managers in charge of the store. Thus, according to Diesel, it is beyond dispute that Greko engaged in exempt management activities.

■ In order to prevail on its motion, Diesel must establish, not just that Greko's job involved management duties, but that he was "primarily" engaged in them. "Primarily" is defined by the California Labor Code as "more than one-half of the employee's worktime." Cal. Labor Code § 515(e). The California Supreme Court has described this method of determining whether work is exempt or non-exempt as "a purely quantitative approach." *Ramirez*, 20 Cal.4th at 797, 85 Cal.Rptr.2d 844, 978 P.2d 2 (discussing application of the outside salesperson exemption, which applies when "more than half" of an employee's working time is spent on outside sales). The court must examine the actual amount of time the employee spends performing exempt work, as well as the employer's realistic expectations and the realistic requirements of the job. *Id.* at 802, 85 Cal. Rptr.2d 844, 978 P.2d 2. In other words, an employer cannot rely on an idealized job

---

**3.** In his Opposition, Greko does not dispute that his monthly salary was greater than two times the minimum wage. Therefore, Diesel's request for judicial notice regarding the "History of California Minimum Wage" is denied as moot.

**4.** Greko filed an appendix of case law in support of his Opposition to the motion for summary judgment after the briefing on the motion was closed pursuant to Civil Local Rule 7–3. The appendix does not consist of judicial opinions published after his Opposition was filed. Accordingly, Diesel's objection to these supplemental materials is sustained.

**5.** Pursuant to 29 C.F.R. § 541.102, exempt management activities include, among other tasks: "interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees;

maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures."

description and the employee cannot claim he was non-exempt based on his own substandard performance.

In this case, Diesel argues that Greko admitted to responsibilities in his position as an ASM that "would necessarily require a substantial amount of time to perform." For instance, in his resume, Greko stated that he oversaw "all store operations in all departments from HR to Finance and Visual Merchandising." He also claimed to "monitor product flow and stock levels," "manage inventory," and "lead by example a team of 30." Thus, Diesel suggests that Greko would not have been able to spend the majority of his time on non-exempt tasks. Furthermore, even when he was engaged in sales activity, Diesel contends that Greko was, at all times, also performing a management function. When he was on the sales floor, Greko served as the "host manager" to whom other sales personnel reported. In that role, Greko would coach and motivate the sales associates, tell them to perform certain work, and evaluate and monitor them. One of the reasons he engaged in sales was to "lead by example," i.e., to make sure the sales associates observed managers following the steps they had been trained to perform. Finally, Diesel suggests that the ASM job description, which does not mention non-exempt sales work, demonstrates that the expectation of his employer was that Greko would be primarily engaged in exempt duties.

Greko, however, expressly testified that he spent the majority of his time on sales. Although he agreed that the ASM job description was accurate as to the information listed on it, he indicated that it did not include sales and other duties he also performed. Instead, he estimates that he spent twenty to twenty-five percent of his time on what he considered to be management duties. In light of that testimony, the Court may not infer, as Diesel suggests, that the management tasks Greko admitted to performing necessarily would occupy the majority of his time. *See, e.g., Thomas v. Ponder,* 611 F.3d 1144, 1149 (9th Cir.2010) (providing that all inferences are drawn in favor of the non-moving party). Moreover, based on California's quantitative approach, the time Greko spent as host manager on the sales floor may not be counted solely as exempt activity where, as here, he testified that he also engaged in sales work. Instead, the time must be apportioned, as applicable, between exempt and nonexempt activities. *See Ramirez,* 20 Cal.4th at 801, 85 Cal.Rptr.2d 844, 978 P.2d 2. In this case, Diesel makes no argument as to the appropriate categorization of Greko's time spent as "host manager" beyond its flawed suggestion that the activity is completely exempt.

In short, Greko's testimony is sufficient to create a disputed issue of fact as to whether he was primarily engaged in non-exempt management duties.[6] In the alternative, Diesel argues that, if the Court concludes some of Greko's activities do not qualify as exempt management duties, the work would fall under a separate exemption for administrative work. *See* Cal. Labor Code § 515(a). An administrative employee must be engaged in the performance of office or non-manual work directly related to "management policies or general business operations" of his or her employer or the employer's customers. *See* Wage Order No. 7–2001. Diesel makes no argument that the sales activity in which Greko claims he was engaged fits this exemption. Accordingly, Diesel's motion for summary judgment must be denied.

### B. *Greko's Motion for Class Certification*

 Pursuant to Federal Rule of Civil Procedure 23(b)(3), Greko seeks to certify a

---

**6.** Diesel objects to the declaration filed by Greko with his Opposition to the motion for summary judgment. During his deposition, Greko agreed that he prepared his resume honestly. In his declaration, Greko explains that tasks listed on his resume include some that he performed at least once or observed someone performing. Diesel contends that Greko's declaration constitutes an improper attempt to create a factual dispute over whether he engaged in certain duties and how much time he spent on them. It therefore objects to the document as a "sham" declaration. *See Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266–67 (9th Cir.1991). As Greko also testified during his deposition that he spent the majority of his time on sales, the Court does not rely on his declaration in finding that a disputed issue of fact exists. Accordingly, Diesel's objection that the declaration is a sham, as well as its additional objections to the declaration, are overruled as moot.

class consisting of all exempt ASMs employed by Diesel in California from April 23, 2006 to the present.[7] In determining whether to grant a motion for class certification, the Court engages in a two-step analysis. First, the plaintiff must establish the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Second, in seeking to proceed under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate and that proceeding as a class action is the superior method for achieving fair and efficient resolution of the case. While the Court retains broad discretion to certify a class, it must conduct a "rigorous analysis" to determine whether the plaintiff has established the requirements of Rule 23. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001) (citations omitted), amended 273 F.3d 1266 (9th Cir.2001). As deciding the class certification question at an early stage of litigation necessarily involves some speculation, "all that is required is that the Court form a 'reasonable judgment' on each certification requirement." *In re Citric Acid Antitrust Litig.*, 1996 WL 655791, 1996 U.S. Dist. LEXIS 16409 (N.D.Cal. Oct. 1, 1996) (citing *Blackie v. Barrack*, 524 F.2d 891, 900–01 and n. 17 (9th Cir.1975)).

### 1. *Numerosity*

■ The numerosity prerequisite requires a determination that the class of potential members is so numerous that the alternative, joinder of individual plaintiffs, is "impracticable." Fed.R.Civ.P. 23(a)(1). While there is no set number that satisfies the requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not. *See Californians for Disability Rights, Inc. v. Cal. DOT*, 249 F.R.D. 334, 346 (N.D.Cal.2008); 5–23 Moore's Federal Practice, Civil § 23.22 (Moore's § 23.22). According to Diesel, the number of individuals previously or currently employed as ASMs during the relevant peri-

od is thirty-three. From this group, the company obtained declarations of fourteen individuals who state that they do not wish to be part of this potential class action. As a result, Diesel argues that the class is essentially reduced to nineteen, a size that it contends is too small to meet the requirement of numerosity. In considering whether a proposed class satisfies this prerequisite, the court does not apply a bright line rule based on size. *See Californians for Disability Rights*, 249 F.R.D. at 346. Thus, whether the class contains thirty-three or nineteen members is not, by itself, determinative. Moreover, in light of the fact that the Court directs notice to potential class members in a Rule 23(b)(3) action, pursuant to Rule 23(c)(2)(B), it is premature to accept Diesel's contention that the potential class is limited to nineteen.

In addition to the potential size of the class, other factors that courts consider in determining if joinder is impracticable include judicial economy, the geographic dispersion of class members, the financial resources of class members, the ability of class members to file individual suits, and whether the suit involves prospective relief that may affect future class members. *See Ansari v. New York Univ.*, 179 F.R.D. 112, 114–115 (S.D.N.Y.1998); Moore's § 23.22. In this case, there is no evidence that class treatment will promote immediate judicial economy, as Diesel maintains no additional suits have been filed claiming that ASMs are misclassified. Moreover, even though Greko suggests that employees who worked briefly for Diesel would have small damages claims, he provides no indication that most class members would be financially unable to initiate their own suits. On the other hand, the class members are geographically dispersed throughout California, which favors class treatment. Individuals who are currently employed by Diesel or former employees who might utilize Diesel as an employment reference may be unwilling to initiate an individual suit against the company. Finally,

---

7. Diesel submits six judicial opinions published after its Opposition to the motion for class certification was filed. Pursuant to Civil Local Rule 7–3(d), the two opinions submitted prior to the noticed hearing date may be submitted without prior Court approval, but may not include any commentary. For the remaining four opinions, Diesel seeks Court approval, which is granted as to the judicial opinions only. No commentary submitted with the opinions is considered.

Diesel currently classifies ASMs as exempt employees. In addition to damages, Greko also seeks to enjoin Diesel from continuing to categorize ASMs in California as exempt employees. Thus, the purported class potentially includes future employees who have not yet been identified. On balance, this suit satisfies the requirement of numerosity.

### 2. *Commonality*

Greko also must establish that common questions of law or fact exist among the class members. Fed.R.Civ.P. 23(a)(2). To meet this requirement, the existence of shared legal issues or common facts need only be "minimal." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1020 (9th Cir.1998). Greko alleges that all ASMs at Diesel were misclassified as exempt. This issue is sufficient to demonstrate the threshold level of commonality and Diesel does not contest this prerequisite.

### 3. *Typicality*

■ Greko must show that his claims are typical of those of the class. Fed.R.Civ.P. 23(a)(3). For this requirement, the Court considers whether the named plaintiffs possess the "same interest and suffer the same injury" as other members of the class. *See Krzesniak v. Cendant Corp.*, No. C 05–05156 MEJ, 2007 WL 1795703, 2007 U.S. Dist. LEXIS 47518 (N.D.Cal. June 20, 2007) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Diesel contends Greko cannot meet this prerequisite because he has not established that his claimed duties were typical of other class members. It relies on the declarations of current and former ASMs it contends demonstrate that class members did not spend the majority of their time on non-exempt work. Diesel's objection, however, relates to the extent to which common legal or factual questions exist. Here, the focus must be on whether Greko's asserted injury is typical of the class. In this case, Greko asserts that he was misclassified and therefore denied overtime, paid meal breaks and rest periods, and other protections of the California Labor Code. As such, his claims are typical of the class of ASMs whom Diesel allegedly misclassified.

### 4. *Adequacy of Representation*

■ Finally, the class representatives must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In order to meet this prerequisite, Greko may not possess a conflict of interest with the proposed class and must be represented by qualified counsel. *See Tierno v. Rite Aid Corp.*, No. C 05–02520 TEH, 2006 WL 2535056, at *3, 2006 U.S. Dist. LEXIS 71794, at *10 (N.D.Cal. Aug. 31, 2006) (citing *Hanlon*, 150 F.3d at 1020). Diesel primarily argues that Greko is an inadequate class representative because he lacks credibility. In support, it points to conflicts between the resume Greko prepared summarizing his duties at Diesel and his subsequent declaration discussing the document. As noted above, in his resume, Greko claims responsibilities including overseeing all store operations. In support of his Opposition to Diesel's motion for summary judgment, Greko states, "I accurately listed duties and tasks that I had performed, *at least one* [sic], *or observed someone perform*, while I was at Diesel." With respect to "terminations," which is listed on his resume, Greko clarifies that he only participated by sitting in on them when they occurred.

In Diesel's view, Greko's declaration constitutes a "blatant contradiction" of his prior testimony that his resume was honestly prepared. It asserts that Greko committed "resume fraud," because he admits to listing some duties that he only observed others performing. Diesel also complains that Greko nowhere lists on his resume the non-exempt duties on which he contends he spent the majority of his time and which form the basis for his claims in this suit. As an additional matter, Diesel suggests that Greko is not adequately representing the class because he was unaware that his counsel had propounded discovery requests and that he apparently did not notice his name was misspelled on documents filed on his behalf.

While Greko now contends that he passively participated in some tasks he listed on his resume, this inconsistency does not so under-

mine his credibility "as to render him unfit to represent the class." *Tierno*, 2006 WL 2535056, at \*4, 2006 U.S. Dist. LEXIS 71794, at \*10 (citation omitted). Nor is the fact that he emphasized managerial tasks in his resume incompatible with his present claim that the majority of his time was spent on duties classified as non-exempt under California law. Finally, the purported flaws that Diesel identifies in Greko's knowledge of this suit do not lead to the conclusion that he is unable to serve competently as class representative.

With respect to the qualifications of counsel, Greko's attorney submits a declaration detailing his experience, including serving as lead counsel in several class actions. Diesel disputes the adequacy of counsel arguing that he has not vigorously prosecuted this case. It contends that counsel has demonstrated only minimal involvement and has left the work to other attorneys whose declarations in support of their qualifications were not filed with the motion for class certification.[8] Diesel further argues that counsel has failed to secure the contact information for, or to submit any declarations from, the putative class members. While Diesel also finds fault with counsels' submissions and tactical decisions in this case, the deficiencies it suggests are not sufficient to lead to the conclusion that counsel are not qualified to maintain this suit. In short, Greko has satisfied the requirement that he will adequately represent the class.

### 5. *Requirements of Rule 23(b)(3)*

Greko seeks to maintain this suit as a class action under Rule 23(b)(3). Accordingly, after satisfying the prerequisites of Rule 23(a), he must also demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior method of adjudication. *See Zinser*, 253 F.3d at 1188. The predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication

by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)) (internal quotation marks omitted). Where questions common to class members represent significant issues that can be resolved in a single adjudication, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (internal quotation marks and citation omitted).

■ Here, Greko argues that whether Diesel misclassified ASMs in its California stores is not just a common question, it also predominates individual issues. In support, Greko alleges that operation of the California stores was centrally controlled by corporate headquarters in New York. For instance, he emphasizes new employees receive a corporate-wide employee handbook and further notes that job descriptions are centrally generated. Corporate payroll works with area managers and other corporate personnel to set the overall payroll budget for stores. The corporate human resources department provides modules for employee training and forms for employee performance reviews. Greko relies on these, and many other, corporate actions to suggest that ASMs form a class of employees with experience similar enough to warrant class treatment.

Diesel counters Greko has not demonstrated that the purported centralized policies placed any limits on the actual discretion of ASMs. Moreover, it contends that the declarations of the former and current ASMs reflect that they, in fact, were not constrained with respect to how they spent their time. Instead, Diesel asserts the declarations establish that employees devoted differing amounts of time to exempt duties depending on factors including the needs of the store, their particular store manager, and their own strengths and weaknesses.

The record, however, reflects that the experience of ASMs in the California stores

---

**8.** As the Court does not rely on the declarations filed with Greko's Reply to the motion for class certification, Diesel's objections are overruled as moot and its request to file supplemental material in response to Greko's Reply is denied. Furthermore, Diesel's objections to the Marsh declaration filed with Greko's motion for class certification are overruled. Although the reporters' certifications were submitted late, the deposition transcripts shall not be deemed inadmissible for that reason.

involves similarities with respect to duties relevant to the misclassification question. The ASMs' declarations indicate that they spend significant time on the sales floor. They characterize this activity in various ways, for instance, as supporting or supervising sales associates, helping the store meet its sales goals, leading by example, and handling customer complaints and returns.[9] Greko considers these activities as "selling," while other ASMs explain that they are always acting as a manager. At the class certification stage, the Court does not consider the merits of these two views. Instead, it considers the question common to all of these experiences, which is whether the activity, regardless of the label the particular employee places on it, constitutes exempt or non-exempt work under California law. If ASMs engaged in both exempt and non-exempt duties while hosting the sales floor, a second common question involves how that time should be apportioned under California's quantitative approach. These questions represent significant issues that would predominate an inquiry into whether individual ASMs were misclassified. Accordingly, the first requirement of Rule 23(b)(3) is satisfied.

Finally, a class action must be the superior method for fair and efficient adjudication of this controversy. Fed.R.Civ.P. 23(b)(3). Under Rule 23(b)(3), factors that the Court considers include: (a) class members' interests in controlling separate actions; (b) the extent and nature of any suits involving the same controversy already initiated; (c) whether concentrating litigation in a particular forum is desirable or undesirable; and (d) the likely difficulties in managing a class action. In this case, there is no indication class members have expressed interest in controlling separate actions and Diesel acknowledges that no other suits have been initiated. Diesel argues that the forum is undesirable as the majority of its California stores are located in southern California. As there are no additional suits pending, however, this choice of forum is not unfair or undesirable to the class. Finally, there are no particular difficulties identified at this time in managing this class action. Altogether, prosecuting this controversy as a class action presents the superior method for fair and efficient adjudication. In sum, Greko has presently satisfied his burden under Rule 23 and the motion for class certification is granted. The Court retains the discretion to review the appropriateness of class certification if future developments so warrant. *See Tierno*, 2006 WL 2535056, at *12, U.S. Dist. LEXIS 71794, at *37 (citing *Armstrong v. Davis*, 275 F.3d 849, 872 n. 28 (9th Cir.2001)).

## IV. CONCLUSION

Diesel's motion for summary judgment is denied. Greko's motion for class certification is granted. Pursuant to Federal Rule of Civil Procedure 23(b)(3), the following class is certified: All persons employed as an Assistant Store Manager by Diesel in any of its California stores during any time between April 26, 2006 and the present. Ryan Greko is appointed class representative and the Law Offices of Daniel L. Feder is appointed class counsel. The parties shall meet and confer regarding the form of a proposed notice pursuant to Rule 23(c)(2)(B) and shall submit a stipulation or a joint update describing the parties' positions within thirty days of the date of this Order.

IT IS SO ORDERED.

---

**9.** *See, e.g.,* the following declarations from the Compendium of Assistant Store Manager Declarations in support of Diesel's Opposition to the motion for class certification: Barkhurst at 3:16–17 ("help the store achieve its daily sales goals"); Bello at 2:16–18 ("lead by example"); Krenzel at 3:20–23; 4:25–26 ("host the sales floor," "even when I am on the floor engaged in sales, I am always supervising the other employees on the sales floor"); Nguyen at 4:3–4 ("interfaced directly with customers to handle their returns and exchanges (because only managers could do this), as well as any complaints"); Phillips at 2:17–18 ("sold product in order to lead by example, demonstrate sales, and observe and evaluate sales associates"); Quinones at 3:19–21 (time on the sales floor divided between "directing employees" and "helping customers or helping associates with customers"); and Song at 2:22–25 ("lead by example," "make sure all the customers were being helped").