Michael McINTEER, Plaintiff,

v.

ASHLEY DISTRIBUTION SERVICES, LTD.; Ashley Furniture Industries, Inc., Defendants.

No. EDCV 13–0268 JGB (DTBx).

United States District Court, C.D. California.

Signed Aug. 19, 2014.

Rosemary Amezcua—Moll Amezcua—Moll and Associates PC Orange, CA, for Plaintiff.

Geoffrey D. Deboskey, Heidi Catherine Larson Howell, Sidley Austin LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JESUS G. BERNAL, District Judge.

Before the Court is Defendants' motion for summary judgment or alternatively,

partial summary judgment. ("Motion," Doc. No. 19.) After considering the papers filed in support of and in opposition to the Motion, and the arguments presented at the June 23, 2014 hearing, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I. BACKGROUND

On November 26, 2012, Plaintiff Michael McInteer ("Plaintiff") filed a Complaint in state court against Defendants Ashley Distribution Services, Ltd. and Ashley Furniture Industries, Inc. (collectively, "Defendants" or "Ashley"). ("Compl.," Not. of Removal, Exh. B, Doc. No. 1.) The Complaint states twelve claims for relief for: (1) wrongful termination in violation of Cal. Gov't Code § 12941; (2) wrongful termination in violation of Cal. Gov't Code § 12940(a); (3) violation of Cal. Lab.Code § 132(a); (4) failure to pay overtime wages; (5) waiting time penalties pursuant to Cal. Lab.Code § 558; (6) penalties pursuant to Cal. Lab.Code § 558; (7) interest on unpaid overtime, attorney's fees and costs pursuant to Cal. Lab.Code §§ 218.5, 218.6, and 1194; (8) violation of Cal. Bus. & Prof.Code § 17200; (9) violation of Cal. Lab.Code §§ 226, 226.3; (10) defamation; (11) intentional infliction of emotional distress; and (12) injunctive relief.[1] (Compl.) The claims pertain to Defendants' termination of Plaintiff's employment as a Transportation Care Manager on December 23, 2011. Defendants removed the action to this Court on February 11, 2013. (Not. of Removal.)

On May 5, 2014, Defendants filed a motion for summary judgment. ("Motion,"

Doc. No. 19.) In support of the Motion, Defendants attached:

- Memorandum of Points and Authorities (Motion);
- Statement of Undisputed Facts ("SUF," Doc. No. 19-2);
- Declaration of Tom Qualman ("Qualman Decl.," Doc. No. 19-3, Tab 1), attaching Exhibits A through D;[2]
- Declaration of Nancy Evanson ("Evanson Decl.," Doc. No. 19-3, Tab 2), attaching Exhibits E through K;
- Declaration of Manual Martinez ("Martinez Decl.," Doc. No. 19-3, Tab 3);
- Declaration of Blaire H. Baily ("Baily Decl.," Doc. No. 19-3, Tab 4), attaching exhibits L through N;
- Declaration of John Leighty ("Leighty Decl.," Doc. No. 19-3, Tab 5), attaching Exhibit O; and
- Request for Judicial Notice ("RJN," Doc. No. 20) attaching Exhibit N.

Plaintiff's opposition was due on May 12, 2014. *See* L.R. 7-9. On May 30, 2014, three days before the hearing on the Motion, Plaintiff filed a motion for extension of time to file his opposition (Doc. No. 21), which Defendants opposed (Doc. No. 22). The Court held a hearing on the request for extension and granted Plaintiff's motion. (Doc. Nos. 27, 31.) The Court reset the hearing on summary judgment for June 23, 2014. (Doc. No. 27.)

Plaintiff filed his late opposition on June 2, 2014. ("Opp'n," Doc. No. 23.) In support thereof, Plaintiff attached:

---

**1.** In his opposition to summary judgment, Plaintiff voluntarily dismisses his third and tenth causes of action for violation of Cal. Lab.Code § 132(a) and defamation. (Doc. No. 23 at 5.) Accordingly, the Court DISMISSES Plaintiff's third and tenth claims for relief.

**2.** Due to the volume of evidence filed in support of and in opposition to the Motion, the Court does not enumerate each attached Exhibit, but describes the documents in subsequent evidentiary citations as needed.

- Statement of Genuine Disputes of Material Fact ("SGI," Doc. No. 23–4);
- Objections to Evidence ("Obj.," Doc. No. 23–2);
- Declaration of Michael McInteer ("McInteer Decl.," Doc. No. 23–3, Tab 1), attaching Exhibit A; and
- Declaration of Sarah Nowels ("Nowels Decl.," Doc. No. 23–3, Tab 2), attaching as Exhibit B excerpts of the deposition of Michael McInteer.

On June 9, 2014, Defendants replied ("Reply," Doc. No. 28) and attached:

- Response to Plaintiff's SGI ("Resp.," Doc. No. 29);
- Response to Plaintiff's Objections to Evidence ("Resp. Obj.," Doc. No. 30); and
- Declaration of Heidi Larson Howell ("Howell Decl.," Doc. No. 28–1) attaching Exhibit A.

## I. LEGAL STANDARD [3]

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997).

The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106

S.Ct. 2548. This burden may be satisfied by either (1) presenting evidence to negate an essential element of the non-moving party's case; or (2) showing that the non-moving party has failed to sufficiently establish an essential element to the non-moving party's case. *Id.* at 322–23, 106 S.Ct. 2548. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548.

However, where the moving party bears the burden of proof at trial, the moving party must present compelling evidence in order to obtain summary judgment in its favor. *United States v. One Residential Property at 8110 E. Mohave,* 229 F.Supp.2d 1046, 1047 (S.D.Cal.2002) (citing *Torres Vargas v. Santiago Cummings,* 149 F.3d 29, 35 (1st Cir.1998) ("The party who has the burden of proof on a dispositive issue cannot attain summary judgment unless the evidence that he provides on that issue is conclusive.")). Failure to meet this burden results in denial of the motion and the Court need not consider the non-moving party's evidence. *One Residential Property at 8110 E. Mohave,* 229 F.Supp.2d at 1048.

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party does not meet this burden by showing "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d

---

**3.** Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

538 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. When ruling on a summary judgment motion, the Court must examine all the evidence in the light most favorable to the non-moving party. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The Court cannot engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the jury. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## II. FACTS

### A. Evidentiary Objections

Plaintiff filed evidentiary objections to the evidence Defendants submitted in support of their Motion. (Obj.) Over half of the objections are aimed at Defendants' purported misstatements of the evidence as represented in their SUF. (*See* Obj. ¶¶ 10–12, 16, 27, 30–31, 34, 36, 59–60, 72–73, 87–89.) "Plaintiff's 'evidentiary objections' to Defendants' separate statements of undisputed facts are not considered because such objections should be directed at the evidence supporting those statements." *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.,* 556 F.Supp.2d 1122, 1126 (E.D.Cal.2008); *Contract Associates Office Interiors, Inc. v. Ruiter,* No. CIV 07–0334 WBS PAN, 2008 WL 2916383, at *5 (E.D.Cal. July 28, 2008) ("[T]he court will not consider Contract Associates' objections to SSUF Nos. 60, 64, and 75 because these objections are aimed only at Ruiter's characterization and purported misstatement of the evidence— as represented in her SSUF—rather than the actual underlying evidence."). In ruling on summary judgment, the Court considers the evidence submitted in support of and opposition to the Motion, it does not rely on the parties' characterization of the evidence. *See Dalton v. Straumann Co. USA Inc.,* No. C–99–4579 VRW, 2001 WL 590038, at *4 (N.D.Cal. May 18, 2001) ("Statements of undisputed facts, as in this case, are generally unhelpful. It is on the underlying declarations, depositions and exhibits that the court will rely."). The Court therefore does not consider Plaintiff's "misstates testimony" or "misstates the document" objections.

All but three of the remaining objections are directed at the coworker complaints Defendants received regarding Plaintiff's conduct. (*See* Obj. ¶¶ 41–42, 46, 51–58.) Plaintiff objects on hearsay and foundation grounds to all evidence of employee complaints. (*Id.*) The Court OVERRULES the hearsay objections as the employees' statements are not offered to establish the truth of the matter asserted. "[W]hether [Plaintiff] actually committed the acts alleged in the investigations or whether the witnesses' statements were true is irrelevant to the issues in this case, and the [complaints] are not considered for those purposes." *See Montoya v. Orange Cnty. Sheriff's Dep't,* 987 F.Supp.2d 981, 993 (C.D.Cal.2013). Instead, Defendants offer the employee statements to show they were aware of the complaints against Plaintiff and that those complaints motivated his termination. *See Calmat Co. v. U.S. Dep't of Labor,* 364 F.3d 1117, 1124 (9th Cir.2004) ("[T]he testimony was not admitted to prove the truth of Sengle's out-of-court statement to supervisors, but as evidence that CalMat supervisors were aware that Lewis threatened him and made racially-offensive comments."); *Means v. City & Cnty. of San Francisco, Dep't of Pub. Health,* 749 F.Supp.2d 998, 1006 (N.D.Cal.2010) (allowing evidence of statements made in an employer's investigation into employee's inappropriate conduct to show that the employer had a non-

discriminatory motive for taking disciplinary action). Plaintiff also objects to this evidence on foundation grounds, but the employees have personal knowledge of their own experiences and the management personnel properly laid the foundation for their knowledge of the employee complaints. Therefore, Plaintiff's foundation objections are also OVERRULED.

Regarding Plaintiff's final three objections, Plaintiff clearly has knowledge of his own actions and statements, thus Objection 61 is OVERRULED. The second and third objections concern Plaintiff's admission that he was speculating on the bases for his termination. (Obj. ¶¶ 87–88.) The Court SUSTAINS Plaintiff's objection to these statements. The basis for Plaintiff's termination is, in part, the subject of the motion for summary judgment and Plaintiff's speculation on the grounds for his termination is a legal conclusion to be decided by the Court. *See Melendez v. Morrow Cnty. Sch. Dist.*, No. CIV. 07–875–AC, 2009 WL 4015426, at *16 (D.Or. Nov. 19, 2009).

## B. Disputed and Undisputed Facts

Unless specifically noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted; they are "admitted to exist without controversy" for purposes of the Motion. L.R. 56–3. All disputed facts are explicitly designated as such.

Ashley has a furniture warehouse in Colton, California which ships and distributes furniture pieces. (SUF ¶ 1; SGI ¶ 1.) The Colton warehouse is a large transportation hub which handles national and international freight in its six shipping yards. (SUF ¶¶ 2–5; SGI ¶¶ 2–5.) The Transportation Care Manager oversees the opera-

tions activity and coordinates personnel in the Colton facility, including overseeing the inbound and outbound freight and the internal movement of trailers, shipping containers, and employees. (SUF ¶ 6; SGI ¶ 6; Martinez Decl. ¶ 5.)

Over the course of several days in August 2011, several Ashley employees, including Director of Human Resources Tom Qualman ("Qualman"), Vice President of Transportation Joel Fasnacht ("Fasnacht"), and Vice President of Transportation and Distribution Centers John Leighty ("Leighty"), interviewed Plaintiff for the position of Transportation Care Manager. (SUF ¶ 9; SGI ¶ 9.) Shortly thereafter, Defendants hired Plaintiff to replace the current Transportation Care Manager, Bob Sheehan ("Sheehan"), and Plaintiff began working in the Colton facility on August 15, 2011 for an annual salary of $72,500. (SUF ¶¶ 8, 39; SGI ¶¶ 8, 39; Deposition of Michael McInteer ("McInteer Depo.") 36:7–19, Baily Decl., Exh. L, Nowels Decl., Exh. B.) When Plaintiff joined Ashley, Sheehan was still employed as Transportation Care Manager, but it was planned that Sheehan would leave the company and Plaintiff would be the sole Transportation Care Manager. (McInteer Depo. 40:23–41:9.) Until Sheehan left, Plaintiff was given the alternate job title— Human Resources and Operations Support. (McInteer Depo. 38:14–21; Martinez Decl. ¶ 6.)

### 1. Job Duties

Once Plaintiff was hired, Ashley expected him to perform the Transportation Care Manager duties at the Colton facility including: recruiting and hiring drivers;[4] coaching, counseling, and disci-

---

4. Plaintiff disputes that he had the authority to hire or fire other employees or was asked

for suggestions regarding hiring and firing. (McInteer Decl. 5 ¶ 8.)

plining current drivers;[5] supporting and supervising office personnel; communicating and negotiating with outside vendors; ensuring compliance with regulations and training subordinates on the regulations; observing, evaluating, and analyzing transportation operations and personnel in the facility and providing recommendations to improve efficiencies; and recommending and implementing improvements and/or modifications of processes, methods, and resource utilization to support the driver and delivery process. (Martinez Decl. ¶¶ 7, 12.) Ashley expected that after Sheehan left, Plaintiff would have a full grasp of the personnel and operations at the Colton facility in order to provide recommendations for and implement changes in procedures to increase efficiencies, reduce accidents, and improve overall results. (Id. ¶ 11.)

Plaintiff testified that he was in training during his entire three month employment with Ashley. (McInteer Depo. 45:6–21.) He was told to "observe the operation, observe the personnel, make my evaluations, learn the basics of the billing, [and] some of the fundamentals of the clerks." (Id. 38:22–25.) As part of his training, Plaintiff worked with the clerks to learn the billing procedures, including preparing bills of lading and shipment manifests. (Id. 42:11–24.) Initially, the percentage of time devoted to billing was 35 to 45 percent, but it dropped down to 20 to 25 percent as he became more knowledgeable. (Id. 42:25–44:1.) Plaintiff spent

about 50 percent of his time observing and being instructed on the operations of the warehouse, learning how to operate the trucks, understanding manpower planning, working with the lead yard man, checking on drivers and equipment, and training in the warehouse and with the dock men. (Id. 44:2–45:25.) In order to understand the overall operation, Plaintiff worked with the equipment in the warehouse, loaded and unloaded trucks, moved drivers, and met customers. (Id. 46:1–24.) He also came in on Saturdays to observe the operation and "get a handle on ... how things performed on the weekend." (Id. 50:24–51:16.) The purpose of all of his training was to enable him to learn as much as he could about the operation in order to analyze the operations, make suggestions for improvements, and improve the work force and operations. (Id. 44:11–45:5.)[6]

After the first three to four weeks, Plaintiff spent about 40 to 50 percent of his work hours "filling in the time" and "looking to stay busy." (Id. 55:13–56:11.) This included talking with employees and drivers and learning their duties. (Id. 56:11–13.)

Plaintiff "set his own schedule," and had discretion to determine how to accomplish his objectives. (McInteer Depo. 47:16–48:14.) He checked in with his supervisor "quite often" to get his input on what to focus on or a particular direction for his

---

5. Plaintiff disputes that he had the authority to recommend a change in employment status for any employee. (McInteer Decl. ¶ 8.)

6. In his declaration, Plaintiff states that he "did not exercise discretion and independent judgment a majority of the time." (McInteer Decl. ¶ 9.) Martinez' declaration, submitted by Ashley, states the opposite. (Martinez Decl. ¶ 11.) These statements constitute legal conclusions and thus are not considered by the Court. *See In re Farmers Ins. Exch., Claims*

*Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1131 (9th Cir.2007) ("[W]e disagree with the district court's legal conclusion ... that an automobile damage adjuster's primary duties [do not] require ... the use of discretion and independent judgment."). Similarly, Plaintiff usurps the role of the Court when he concludes that he was not involved in the management of Ashley. (McInteer Decl. ¶ 6.) *See* 29 C.F.R. 541.2(a).

training.[7] (*Id.*) Defendants provide no evidence of the instruction or direction Plaintiff received from his supervisor.

### 2. Age

During the entirety of his employment with Ashley, Plaintiff was 62 years old. (SUF ¶ 83; SGI ¶ 83.) The individual hired to replace Plaintiff was 56 years old.[8] (Evanson Decl. ¶ 17.)

Plaintiff testified that Leighty asked him his age during one conversation between them on November 15 or 16, 2011. (SUF ¶ 89; SGI ¶ 89.) During this meeting, Leighty mentioned that he would understand if Plaintiff wanted to look for other work. (McInteer Depo. 170:15–19.) Leighty does not recall asking Plaintiff his age. (Leighty Decl. ¶ 5.)

### 3. Employee Complaints

On Plaintiff's first or second day at Colton, a coworker, Margarita Gomez ("Gomez") complained to Human Resources that Plaintiff twice told her that he "wanted to get to know her on a personal level." (SUF ¶¶ 40–41; SGI ¶¶ 40–41.) She reported these comments were "threatening," "alarming," and "embarrassing." (Qualman Decl., Exh. B.)

The Human Resources manager held a meeting on August 17, 2011 with Plaintiff and Gomez regarding the complaint.

(SUF ¶ 43; SGI P 43.) Plaintiff explained the intent of his conversation and apologized for the miscommunication. (SUF ¶ 44; SGI ¶ 44.)

Between August 15, 2011 and November 22, 2011, Ashley received several verbal complaints about Plaintiff from his coworkers. (SUF ¶ 45; SGI ¶ 45.) On November 22, 2011, Leighty learned that Tim Pavloff ("Pavloff"), a Colton employee, complained that Plaintiff invited him to share a single person restroom. (SUF ¶ 46; SGI ¶ 46.) Leighty instructed Qualman to address the complaint immediately and to conduct an investigation. (Leighty Decl. ¶ 6.) That day, Qualman and other Ashley personnel interviewed several employees, including Pavloff, Gomez, Phirath Hou, Sheehan, Charles Fairhurst, and Richard Sandoval. (Qualman Decl. ¶ 7.) During Gomez' interview, she made additional complaints including that Plaintiff was aggressive, followed her around the office all day including to the restroom, rubbed up against her when she was at the copy machine, made an offensive comment about women being subservient to men, and made her feel uncomfortable. (Qualman Decl., Exhs. A, B.) During Sheehan's interview, he complained that Plaintiff initiated two unwelcome conversations about penis size. (*Id.*) Pavloff once again stated that in October 2011 Plaintiff invited him

---

7. There is a dispute as to the identity of Plaintiff's supervisor. It is undisputed that until he left the company, Fasnacht was Plaintiff's supervisor. (SUF ¶ 37; SGI ¶ 37.) After Fasnacht left in November 2011, there is a dispute as to whether Plaintiff reported to Leighty or Manny Martinez. (*Compare* Leighty Decl. ¶ 4 *with* McInteer Depo. 170:7–10.)

8. Plaintiff attempts to dispute this fact by contending that Defendants failed to identify Plaintiff's replacement or his job duties. (SGI ¶ 84.) A lack of evidence does not create a disputed issue of fact. *See Malfatti v.*

*Mortgage Elec. Registrations Sys., Inc.,* No. C 11–03142 LB, 2013 WL 3157868, at *9 (N.D.Cal. June 20, 2013) ("But these purported insufficiencies do not constitute a dispute of material fact that actually supports Malfatti's affirmative case. Essentially, Malfatti asks the court to infer evidence of liability based on purported weaknesses in the evidentiary record. While the court resolves reasonable inferences in Malfatti's favor, his failure to obtain discovery does not mean he can withstand summary judgment."). The fact remains undisputed for purposes of summary judgment.

to share a single person restroom. (*Id.*) Pavloff declined the invitation, which he found offensive and immediately reported it to Sheehan. (*Id.*)

On November 23, 2011, Human Resources personnel interviewed Plaintiff and gave him an opportunity to respond to the complaints. (SUF ¶ 49; SGI ¶ 49.) Plaintiff denied or could not recall the events described in the complaints. (Qualman Decl., Exh. C.) Ashley asked Plaintiff to provide a written statement, but he said he felt too sick to do so and left work. (SUF ¶ 61; SGI ¶ 61.) Qualman presented the findings from his investigation into the complaints to Leighty. (SUF ¶ 78; SGI ¶ 78.)

After the meeting on November 23, 2011, Plaintiff never returned to work. (SUF ¶ 63; SGI ¶ 63.)

### 4. Absences

Ashley's attendance policy includes a provision addressing "excessive absences," which states that "[t]he Company may deem an employee's absences within a 365–day period as excessive whether excused or unexcused" and "reserves the right to administer corrective action up to and including termination to the employee to address their excessive absenteeism." ("Policy," Evanson Decl., Exh. F.) In a separate provision, the Policy includes a progressive discipline procedure, including several written warnings for up to four unexcused absences within one year; the

fifth absence incurs the possibility of termination. (*Id.*) The Policy defines an excused absence as one in which the "employee has submitted acceptable medical documentation substantiating that he/she is incapable of working for the time of absence." (*Id.*) [9]

On November 25, 2011, Plaintiff faxed a doctor's note to Ashley excusing him from work from November 23 through December 2, 2011. (SUF ¶ 68; SGI ¶ 68.) On December 5, 2013, Plaintiff faxed two notes excusing him from work from December 2 to 5 and December 5 to 8 for "major depression, single episode moderate." (SUF ¶¶ 69–70; SGI ¶¶ 69–70.) There is a dispute as to whether Ashley received a doctor's note for the period from December 9 to 15, 2011. Ashley contends Plaintiff did not provide any notification regarding his absences during this period. (Evanson Decl. ¶ 12.) Plaintiff, on the other hand, recalls faxing every work order, including the one covering this period. (McInteer Decl. ¶¶ 13–14, Exh. A.) There is no dispute that on December 16, 2011, Plaintiff faxed Ashley a work status report taking him off work from December 19 through 21. (Evanson Decl., Exh. J.) This report also noted that Plaintiff was "off work per Psychiatry ... from 11/23/11 until 12/19/11." (*Id.*) Plaintiff did not report to work on December 22, 2011, nor did he notify Ashley in advance of his absence. (SUF ¶ 75; SGI ¶ 75.) The following day, Plaintiff sent Ashley a doctor's note taking him off work from December

---

**9.** The Policy also states that an employee who has not received prior authorization to be absent "is obligated to notify the Company in writing or by phone prior to the commencement of the work shift of any absence and the reason for the absence." (Evanson Decl., Exh. F.) "Failure to give [prior] notice may result in disciplinary action up to and including termination of employment." (*Id.*) In another section entitled "extended absences," the Policy states that being absent for three or

more days without notifying Ashley in advance may subject the employee to termination. (*Id.*) At the hearing, Defendants made clear that they are not relying on these provisions of the Policy to support their termination decision. Thus, the Court does not rely on Plaintiff's violations of these provisions in its analysis of Defendants' legitimate non-discriminatory reasons for Plaintiff's discharge.

22, 2011 to January 2, 2012. (SUF ¶ 76; SGI ¶ 76.)

#### 5. Termination

On December 23, 2011, Ashley terminated Plaintiff's employment citing his "excessive absenteeism" and "the complaints made against [Plaintiff] from [his] coworkers." (Qualman Decl., Exh. D.) Based on the volume of complaints of inappropriateness, Leighty, the primary decisionmaker regarding Plaintiff's termination, believed Plaintiff was not suited for the job, had violated Ashley's workplace behavior policies, and could not act as a leader overseeing and managing employees and relationships with third parties. (Leighty Decl. ¶ 8.) Ashley's harassment policy prohibits sexually harassing conduct, including unwelcome sexual advances, verbal commentary about an individual's body, and verbal conduct of a sexual nature. (Evanson Decl., Exh. K.)

Plaintiff disputes the bases for his termination. Plaintiff contends Ashley terminated him because he was on medical leave and because of his age. (SGI ¶¶ 79–80.) Plaintiff believes Ashley waited to solicit false accusations from his coworkers until the day he was away from work for an age-related medical procedure, namely a colonoscopy, in order to push him out.[10] (McInteer Depo. 190:15–25; 207:8–208:15; 212:3–5.) Plaintiff testified that he believes each of the complainants had reasons to falsify their allegations against Plaintiff, including mental instability and resentment due to Plaintiff's hiring. (McInteer Depo. 73:4–12, 79:6–22.) Plaintiff notes that other employees interviewed by Qualman indicated that Plaintiff was a "good" and "intelligent guy." (Qualman Decl., Exh. A.)

As a result of Defendants' conduct, Plaintiff suffered depression, stress, difficulty sleeping, impatience with his family, lethargy, anxiety, inability to keep cohesive thoughts or make decisions, isolation, and became withdrawn and inactive. (SUF ¶ 97; SGI ¶ 97.)

### III. DISCUSSION

#### A. Wrongful Termination

Plaintiff states two claims for wrongful termination based on discrimination against his membership in two protected classes. The first cause of action alleges that Plaintiff was terminated because of his age and the second because of his disability. (Compl. ¶¶ 44–61.) The California Fair Employment and Housing Act ("FEHA") outlaws employment discrimination against individuals over forty years old. *See* Cal. Gov't Code §§ 12926, 12940(a). FEHA also prohibits unlawful discrimination based on a disability pursuant to California Government Code Section 12940(a).

"California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination...." *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000). This framework applies to wrongful termination claims based on age and disability discrimination. *See id.; Sandell v. Taylor–Listug, Inc.*, 188 Cal.App.4th 297, 307, 115 Cal.Rptr.3d 453 (2010); *Nielsen v. Trofholz Technologies, Inc.*, 750 F.Supp.2d 1157, 1164 (E.D.Cal.2010), *aff'd*, 470 Fed. Appx. 647 (9th Cir.2012).

A plaintiff must first establish a prima facie case of discrimination. If the

---

**10.** There is a dispute about the date of Plaintiff's colonoscopy. Plaintiff testified it occurred on November 14, 2011 (McInteer Depo. 187:24–188:17), but subsequently declared it took place on November 21, 2011 (McInteer Decl. ¶ 10).

plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994) (citations omitted); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Morgan v. Regents of Univ. of Cal.*, 88 Cal.App.4th 52, 68–69, 105 Cal. Rptr.2d 652 (2000);

### 1. Disability Discrimination Prima Facie Case

■ In order to establish a prima facie case of disability discrimination under the FEHA, a plaintiff must show (1) he suffered from a disability, (2) he could perform the essential duties of his job with or without reasonable accommodation, and (3) he was subjected to adverse employment action because of his disability. *Sandell*, 188 Cal.App.4th at 310, 115 Cal.Rptr.3d 453.

Defendants do not challenge the fact that Plaintiff suffered from a disability, which he claims includes Acute Stress Disorder which began on November 23, 2011, vertigo which caused him to miss one day of work (SGI ¶ 102), and his colonoscopy.[11]

■ Defendants argue that Plaintiff has no evidence to suggest Ashley terminated him because of his disability. (Motion at 10.) Plaintiff contends that the coincidence in timing between his medical leave and termination and between investigation into the complaints and his colonoscopy demonstrate a prima facie case of discrimination. (Opp'n at 9–10.) Plaintiff's termination letter also cited "excessive absenteeism" as a basis for his termination, but he argues these absences were medically excused. (*Id.* at 10.) Moreover, Plaintiff believes Defendants' failure to use its progressive discipline policy for Plaintiff's absences constitutes evidence of discrimination. (*Id.*)

Numerous courts note that "[t]he prima facie burden is light; the evidence necessary to sustain the burden is minimal." *Sandell*, 188 Cal.App.4th at 310, 115 Cal. Rptr.3d 453. Because an "employee need only offer sufficient circumstantial evidence to give rise to a reasonable inference of discrimination," *id.*, the Court finds that these facts are sufficient to establish a prima facie case that Plaintiff was subjected to adverse employment action because of his disability. *See Diaz v. Fed. Express Corp.*, 373 F.Supp.2d 1034, 1064 (C.D.Cal. 2005) ("Although Defendant may have fired Plaintiff because of his absences, Plaintiff alleges that his absences were caused by his mental condition. Thus, if the trier of fact finds that Plaintiff's condition constituted a disability for purposes of the FEHA, and if the trier of fact believes that Plaintiff's absences were caused by that disability, Plaintiff will have established that Defendant's termination of Plaintiff was an adverse employment ac-

11. It does not appear that Plaintiff's colonoscopy constitutes a disability under the FEHA. In order to qualify as a "physical disability" under the FEHA, the "disease, disorder, condition, cosmetic disfigurement, or anatomical loss" must "limit[ ] a major life activity." Cal. Gov't Code § 12926(m). Missing work for one day for a routine medical procedure unrelated to any identified disease, disorder, or condition does not constitute a disability. In addition, there is no evidence that Ashley was aware of Plaintiff's vertigo or that it limited a major life activity, given that Plaintiff missed only one day of work. *See* Cal. Gov't Code § 12926(m). Nonetheless, because Ashley does not challenge Plaintiff's assertion that he was disabled, the Court assumes this element is met. (Reply at 2 n. 1.)

tion taken because of Plaintiff's disability."); *Arteaga v. Brink's, Inc.,* 163 Cal. App.4th 327, 334, 77 Cal.Rptr.3d 654 (2008) ("[T]emporal proximity, by itself, may be sufficient to establish a prima facie case of discrimination . . .").

Defendants also argue that Plaintiff cannot make a prima facie case for disability discrimination because he cannot demonstrate that he was performing satisfactorily at the time of his termination. (Motion at 9–10 (citing *Zeinali v. Raytheon Co.,* 636 F.3d 544, 552 (9th Cir.2011)).) However, California courts have questioned whether Plaintiff must make this showing at the prima facie stage on summary judgment. *See Sandell,* 188 Cal.App.4th at 322, 115 Cal.Rptr.3d 453 ("While we agree that a plaintiff must demonstrate some basic level of competence at his or her job in order to meet the requirements of a prima facie showing, the burden-shifting framework established in *McDonnell Douglas* compels the conclusion that any measurement of such competency should, to the extent possible, be based on objective, rather than subjective, criteria."). As *Sandell* states, courts that have considered this factor at the prima facie stage rely on objective performance reviews and evidence of demotions to demonstrate unsatisfactory performance. *See Holtzclaw v. Certainteed Corp.,* 795 F.Supp.2d 996, 1010 (E.D.Cal.2011). Defendants have not produced any such objective evidence for the Court's consideration.

### 2. Age Discrimination Prima Facie Case

██ "In order to make out a prima facie case of age discrimination under FEHA, a plaintiff must present evidence that the plaintiff (1) is over the age of 40; (2) suffered an adverse employment action; (3) was performing satisfactorily at the time of the adverse action; and (4) suf-

fered the adverse action under circumstances that give rise to an inference of unlawful discrimination, i.e., evidence that the plaintiff was replaced by someone significantly younger than the plaintiff." *Sandell,* 188 Cal.App.4th at 321, 115 Cal. Rptr.3d 453.

Defendants challenge Plaintiff's ability to satisfy the third and fourth elements of his prima facie case. (Motion at 10–11.) Because the Court finds that Plaintiff cannot establish any evidence giving rise to an inference of unlawful discrimination based on age, the Court does not address the third element concerning Plaintiff's performance.

██ Plaintiff relies on a single conversation in which, according to Plaintiff, Leighty asked him his age. An isolated and stray remark is insufficient to establish discrimination without other indicia of discriminatory intent. *See Reid v. Google, Inc.,* 50 Cal.4th 512, 541, 113 Cal.Rptr.3d 327, 235 P.3d 988, 1008 (2010) ("A stray remark alone may not create a triable issue of age discrimination."). Moreover, Leighty's question does not raise any inference that his decision to terminate Plaintiff was motivated by animus against Plaintiff's age. By merely asking his age, Leighty's comment is ambiguous and the Court cannot infer the question is reflective of any discriminatory animus, as opposed to for example curiosity or admiration.

At the hearing, Plaintiff argued that the proximity in time between Leighty's question and his investigation of the coworker complaints is sufficient to establish a prima facie case of age discrimination. However, the evidence is undisputed that Leighty only became aware of the employee complaints a week after his conversation with Plaintiff and thus could not have investigated them sooner. (SUF ¶ 46; SGI ¶ 46.) An ambiguous stray remark a month prior

to Plaintiff's termination is insufficient to raise an inference of discrimination.[12] *See Harris v. City of Santa Monica*, 56 Cal.4th 203, 231, 152 Cal.Rptr.3d 392, 294 P.3d 49 (2013) ("[S]ection 12940(a) does not purport to outlaw discriminatory thoughts, beliefs, or stray remarks that are unconnected to employment decisionmaking."); *Korte v. Dollar Tree Stores, Inc.*, No. CIV. S–12–541 LKK, 2013 WL 2604472, at *13–14 (E.D.Cal. June 11, 2013) ("[E]ven when considered with the other evidence presented by Korte, the stray remarks he documents are insufficient to make out a prima facie case that age discrimination played a role in his termination.").

Plaintiff argues, without any supporting evidence, that Ashley "conjured up" these complaints in order to support his discriminatory termination. However, the evidence is undisputed that the interviews of Plaintiff's coworkers were spurred by Qualman reporting Pavloff's complaint to Leighty, who ordered an immediate investigation. (Qualman Decl. ¶¶ 5–6.)

■ "Even if plaintiff had provided some direct evidence of discriminatory motive, it would be weakened by the fact that the same person was responsible for [his] hiring and [his] firing, thereby creating a 'strong inference' that there was 'no discriminatory motive.'" *Krylova v. Genentech Inc.*, 37 F.Supp.3d 1156, 1165, 2014 WL 1478698, at *8 (N.D.Cal. Apr. 14, 2014) (quoting *Bradley v. Harcourt, Brace, and Co.*, 104 F.3d 267, 270–71 (9th Cir.1996)). The same-actor inference is "a strong inference that a court must take into account on a summary judgment motion." *Schechner v. KPIX–TV*, 686 F.3d 1018, 1026 (9th Cir.2012) (internal quotation omitted). Both Qualman and Leighty were involved in the decision to hire Plaintiff and to terminate him only four months later. "[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Bradley*, 104 F.3d at 270–71. Plaintiff provided no evidence to counter this strong inference.[13]

12. Even if such evidence were sufficient to establish a prima facie case, it is unquestionable that the temporal proximity of the stray remark would not be sufficient proof of pretext to overcome summary judgment. *See Arteaga v. Brink's, Inc.*, 163 Cal.App.4th at 354, 77 Cal.Rptr.3d 654 ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of [pretext].") (quotation omitted).

13. Plaintiff argues he needs additional discovery to determine the extent of Leighty and Fasnacht's role in his hiring, including taking the deposition of Fasnacht. Plaintiff asks the Court to grant Plaintiff additional time to conduct discovery. Plaintiff has not complied with Rule 56(d), which requires that "[a] party requesting a continuance pursuant to Rule [56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir.

2006). Here, counsel's affidavit conclusorily states that additional discovery "could assist Plaintiff in opposing the motion" and vaguely describes some questions counsel would like answered. (Nowels Decl. ¶ 3.) Plaintiff does not describe the specific facts that would be revealed or why this discovery would preclude summary judgment. "Failure to comply with the requirements of Rule [56(d)] is a proper ground for denying discovery and proceeding to summary judgment." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir.1986); *see also Tatum*, 441 F.3d at 1100–01 (finding that an attorney declaration was insufficient to support a Rule 56 continuance where the declaration failed to specify specific facts to be discovered or explain how a continuance would allow the party to produce evidence precluding summary judgment). Plaintiff fails to comply with the requirements of Rule 56(d) and has not met his burden to identify specific facts and why they would preclude summary judgment. Moreover, Plaintiff had nearly 18

Finally, Plaintiff cannot show that he was replaced by a substantially younger employee. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) ("[A]n inference [that a decision was based on age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger."). While Plaintiff was 62 years old during his employment, his replacement was 56 at the time of hire. Plaintiff does not contest this fact; instead, he argues that he lacks sufficient information as to the identity of his replacement and his job duties, which "has hampered his ability to discover the accuracy of Defendants' statements." (Opp'n at 11.) Plaintiff's lack of evidence is insufficient to meet his burden to raise an inference of unlawful discrimination. Lacking contrary evidence, the fact that Plaintiff was replaced by an employee of approximately the same age strongly suggests that his termination was not based on age-based animus. *See Smith v. Int'l Bhd. of Elec. Workers*, 109 Cal.App.4th 1637, 1658, 1 Cal.Rptr.3d 374 (2003); *Buchanan v. Safeway Stores, Inc.*, No. C 95–1658 FMS, 1996 WL 723089, at *6 (N.D.Cal. Dec. 6, 1996), *aff'd*, 133 F.3d 925 (9th Cir.1997) ("The Court finds that plaintiff did not establish a prima facie case because he failed to prove ... he was replaced by a younger worker.").

A single question regarding Plaintiff's age is insufficient to establish a prima facie case of age discrimination. Accordingly, Defendants are entitled to summary judgment on Plaintiff's first cause of action for FEHA age discrimination.[14]

## 3. Legitimate Non–Discriminatory Reasons

Once a FEHA plaintiff demonstrates a prima facie case, the burden shifts to the employer to articulate some legitimate non-discriminatory reason for the employee's discharge. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Guz*, 24 Cal.4th at 355–356, 100 Cal.Rptr.2d 352, 8 P.3d 1089. Defendants must make a "sufficient showing of a legitimate reason for discharge." *King v. United Parcel Serv., Inc.*, 152 Cal.App.4th 426, 433, 60 Cal.Rptr.3d 359 (2007). Defendants' "burden is one of production, not persuasion, thereby involving no credibility assessment." *See Day v. Sears Holdings Corp.*, 930 F.Supp.2d 1146, 1169 (C.D.Cal.2013).

Although Plaintiff was able to make a prima facie case for disability discrimination, he was unable to carry his burden on age discrimination. Nevertheless, as to both claims, Defendants present evidence of a legitimate non-discriminatory reason for Plaintiff's termination unrelated to age or disability.

In support of its decision to terminate, Ashley points to the numerous co-worker complaints about Plaintiff's sexual-

---

months to conduct discovery before Defendants moved for summary judgment, and has not described why this was insufficient time to investigate his case. *Brae Transp.*, 790 F.2d at 1443 (a party cannot complain if it fails to pursue discovery diligently before summary judgment). The Court DENIES Plaintiff's request for time to conduct additional discovery.

**14.** At the hearing, Plaintiff argued that his colonoscopy supported his age discrimination claim. It appears that Plaintiff contends that

a colonoscopy is an age-related medical procedure, and terminating him after he took one day off for this procedure is evidence of age discrimination. However, Plaintiff presents no evidence that any decisionmaker was aware that he had a colonoscopy in November 2011. *See Avila v. Cont'l Airlines, Inc.*, 165 Cal.App.4th 1237, 1251, 82 Cal.Rptr.3d 440 (2008) ("decision maker must be aware of disability 'when the adverse employment decision was made'") (quotation omitted).

ly explicit comments and inappropriate workplace behavior. Such complaints, supported by written documentary evidence, are sufficient to rebut a prima facie case of discriminatory discharge. *See Batista v. Stewart Enterprises, Inc.*, 126 Fed.Appx. 767, 769 (9th Cir.2005) (finding employer proffered a non-discriminatory reason for employee's termination with evidence of " 'inappropriate, sexual, and willful misconduct,' reported by several of Batista's co-workers and documented in an investigation").

As a second basis for termination, Ashley cites Plaintiff's excessive absenteeism in violation of the Attendance Policy. (Motion at 13.) The Policy allows Ashley to take corrective action, including termination, if it deems an employee's absences within a 365–day period as excessive, whether excused or unexcused. (Evanson Decl., Exh. F.) Ashley found Plaintiff's 30 days of absences within a 4–month period to be excessive and cited this as a basis for his discharge in his termination letter. (Qualman Decl., Exh. D.)

Courts have recognized that violation of company policies is a legitimate, nondiscriminatory reason for terminating an employee. *Day v. Sears Holdings Corp.*, 930 F.Supp.2d 1146, 1170 (C.D.Cal.2013). Several courts have specifically held that "excessive attendance infractions" established a nondiscriminatory reason for discharge. *Hooker v. Parker Hannifin Corp.*, 548 Fed.Appx. 368, 370 (9th Cir.2013); *Dumas v. New United Motor Mfg., Inc.*, 305 Fed. Appx. 445, 448 (9th Cir.2008) ("NUMMI proffered a legitimate, non-discriminatory missed reason for terminating Mr. Dumas-his violation of company policy requiring written permission for extended leaves of absence"). *But see Diaz v. Fed. Express Corp.*, 373 F.Supp.2d at 1065 ("[I]f the trier of fact finds that Plaintiff was disabled for purposes of FEHA, Defendant's

firing of Plaintiff on the basis of absences incurred as a result of that disability would not constitute a legitimate, non-discriminatory reason for terminating Plaintiff, and Plaintiff would be able to establish disability discrimination on the basis of Plaintiff's prima facie case.").

Defendants' reasons for terminating Plaintiff, namely complaints of inappropriate behavior from coworkers and violations of company attendance policies, constitute legitimate and non-discriminatory bases for removal. *Guz*, 24 Cal.4th at 355, 100 Cal.Rptr.2d 352, 8 P.3d 1089.

**4. Pretext**

■ Once an employer has established a legitimate, nondiscriminatory reason for termination, to " 'avoid summary judgment ..., an employee claiming discrimination must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' " *Wills v. Superior Court*, 195 Cal.App.4th 143, 160, 125 Cal.Rptr.3d 1 (2011) (citation omitted); *King*, 152 Cal.App.4th at 433, 60 Cal.Rptr.3d 359 (The discharged employee seeking to avert summary judgment "must produce substantial responsive evidence to show that [the employer's] ostensible motive was pretextual; that is, that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence."). The plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, ... and hence infer that the employer did not

act for the [. . . asserted] nondiscriminatory reasons." *Morgan v. Regents of Univ. of Cal.*, 88 Cal.App.4th 52, 75, 105 Cal. Rptr.2d 652 (2000) (citation omitted); *Villanueva v. City of Colton*, 160 Cal. App.4th 1188, 1195, 73 Cal.Rptr.3d 343 (2008). Circumstantial evidence must be "specific and substantial." *Morgan*, 88 Cal.App.4th at 69, 105 Cal.Rptr.2d 652; *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661 (9th Cir.2002).

### i. Excessive Absences

Plaintiff argues that Defendants' citation of "excessive absenteeism" as a basis for his termination is evidence of discriminatory animus and pretext. (Opp'n at 9.) The uncontroverted evidence shows that Plaintiff's absences occurred because of his disability. Plaintiff submitted several Work Status Reports to Defendants which clearly indicate he required time off work due to his diagnosis of "major depression" or "depression." (Evanson Decl., Exhs. H, I, J.) Thus, it is undisputed that Defendants were aware of Plaintiff's medical condition and its causal relationship to an undisputed majority of Plaintiff's absences from November 23, 2011 to December 23, 2011. (SUF ¶¶ 69–70; SGI ¶¶ 69–70.) *See Brundage v. Hahn*, 57 Cal.App.4th 228, 236–37, 66 Cal.Rptr.2d 830 (1997) ("[A] plaintiff must prove the employer had knowledge of the employee's disability when the adverse employment decision was made."); *see also Avila*, 165 Cal. App.4th at 1248, 82 Cal.Rptr.3d 440 ("[T]o show that Continental acted with discriminatory intent, plaintiff was required to produce evidence that the Continental employees who decided to discharge him knew of his disability.").

■ "[C]onduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1139–40 (9th Cir. 2001). It is undisputed that Plaintiff's absences resulted from his disability and thus are considered part of the disability. By citing his absences as a basis for termination, Defendants ipso facto cited his disability. *See Gonzalez v. ATI Sys. Int'l, Inc.*, B223779, 2011 WL 1902582, at *8 (Cal.Ct.App. May 20, 2011) ("When an employer discharges an employee for conduct that is caused by the employee's disability, such as absenteeism, then the employer has terminated the employee because of his or her disability.").

■ *Humphrey* is directly applicable here. In Humphrey, the court analyzed disability discrimination claims under the Americans with Disability Act ("ADA") together with FEHA claims. *Humphrey*, 239 F.3d at 1133 n. 6 ("Because the FEHA provisions relating to disability discrimination are based on the ADA, decisions interpreting federal anti-discrimination laws are relevant in interpreting the FEHA's similar provisions.").[15] The employee in *Humphrey* suffered from obsessive compulsive disorder ("OCD") which she claimed caused her to be chronically late or absent from work. *Id.* at 1134. Her employer terminated her and its "stated reason for Humphrey's termination was absenteeism and tardiness." *Id.* at 1139. The court reasoned that the "link between disability and termination is particularly strong" where a "known disability [ ] leads to discharge for performance inadequacies resulting from that disability." *Id.* at 1140. The court held "a jury could reasonably find the requisite causal link between

**15.** "Federal authorities interpreting and applying the ADA are . . . useful in interpreting FEHA, unless significant differences exist between the FEHA and ADA provisions at issue." *Wills*, 195 Cal.App.4th at 167, 125 Cal. Rptr.3d 1.

a disability of OCD and Humphrey's absenteeism and conclude that MHA fired Humphrey because of her disability." *Id.*

Like in *Humphrey,* there undisputed evidence of the causal link between Plaintiff's Acute Stress Disorder and his excessive absences, and a jury could reasonably conclude that Defendants terminated Plaintiff because of his disability.[16]

Defendants argue that the Attendance Policy specifically states that an employee, like Plaintiff, can be terminated for excessive absences. However, even uniform application of a company policy can raise a triable issue of fact where there is evidence that it was a pretext for discrimination. *See Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108, 1114 (9th Cir.2011). Moreover, the Policy does not define the number of excused absences necessary to constitute "excessive absenteeism," leaving Defendants substantial discretion in determining violations. *See Kranson v. Fed. Exp. Corp.,* No. 11–CV–05826–YGR, 2012 WL 4715337, at *9 (N.D.Cal. Oct. 1, 2012) (refusing to grant summary judgment where employer applied its discretionary policy to the employee and the court was unable to find as a matter of law that the application of the policy was non-discriminatory). In addition, the Policy contains a progressive discipline procedure for absences, which Defendants did not utilize in this case, further demonstrating the flexibility of the Policy and the possibility of misuse. *See Norris v. Allied–Sysco Food Services, Inc.,* 948 F.Supp. 1418, 1434

(N.D.Cal.1996) (where employer stated in writing that the reason it terminated plaintiff was her continuing unavailability for work and reasonable jury could have concluded she was unavailable for work because of her disability, a triable issue existed regarding whether plaintiff's disability was a motivating factor in employer's decision to terminate her). Construed in the light most favorable to Plaintiff, Defendants' finding of a policy violation is insufficient to warrant summary judgment where there is substantial evidence of pretext.

#### ii. Employee Complaints

■ Defendants argue that there is no evidence that their reliance on the employee complaints was a pretext for disability discrimination. Although the Court agrees that Plaintiff failed to meet his burden of establishing the complaints were a pretext for discrimination, the Court is unable to grant summary judgment on Plaintiff's disability discrimination claim for the reasons discussed herein.

■ First, Plaintiff challenges the complaints as a basis for his termination by arguing that the timing of Ashley's investigation is "highly suspect," occurring the day after Plaintiff's colonoscopy and the week after Leighty asked his age. (Opp'n at 12.) Even assuming a colonoscopy could be considered a disability under FEHA, "temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory

---

**16.** Recently in *Wills v. Superior Court,* 195 Cal.App.4th 143, 125 Cal.Rptr.3d 1 (2011), the court "interpret[ed] FEHA as authorizing an employer to distinguish between disability-caused misconduct and the disability itself in the narrow context of threats or violence against coworkers." *Id.* at 165–66, 125 Cal. Rptr.3d 1. The court specifically noted that it was not presented with the situation in *Humphrey* and "express[ed] no opinion on whether

FEHA permits an employer to distinguish between disability-caused misconduct and the disability itself in any factual setting other than threats or violence against coworkers." *Id.* at 166, 125 Cal.Rptr.3d 1. Because *Wills* did not invalidate or address the situation presented here, where there are no indicia of threats or violence, it does not affect the precedential value of *Humphrey.*

reason for the termination." *Arteaga*, 163 Cal.App.4th at 353, 77 Cal.Rptr.3d 654. Given Plaintiff's short four-month employment with Ashley, Plaintiff's termination is proximate to his entire time at the Colton facility and cannot raise an inference above mere speculation. Ashley provided uncontradicted evidence that it became aware of Pavloff's complaint on November 22, 2011 and Plaintiff was terminated a month later after several violations of Ashley's attendance policy. Plaintiff provides no evidence, other than speculative assertions, from which a reasonable trier of fact could find the timing of his termination discriminatory. *See Granillo v. Exide Technologies, Inc.*, No. CV 10–1080 SJO FMOX, 2011 WL 2535112, at \*15 (C.D.Cal. May 20, 2011) (granting summary judgment for employer where employee argued that the timing of investigation into policy violations was "completely suspicious" given that employer was aware of them for over a year).

Next, Plaintiff asserts that he did not do the acts alleged in the employee complaints and they therefore cannot be used as a basis for his termination. (Opp'n at 9.) However, "[i]t is the employer's honest belief in the stated reasons for firing an employee and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case." *King*, 152 Cal.App.4th at 436, 60 Cal.Rptr.3d 359. Plaintiff presents no evidence from which a reasonable trier of fact could conclude that Ashley did not honestly believe that Plaintiff committed the inappropriate and explicit acts described in the coworker complaints. Even if Ashley was wrong to credit the three employees who made complaints against Plaintiff in the face of his contrary account, "[a]n employee in this situation cannot simply show the employer's decision was wrong, mistaken, or unwise," he must show discrimination on the basis of disability or age. *Villanueva*, 160 Cal.App.4th at 1195, 73 Cal.Rptr.3d 343.

Plaintiff also contends that the complaints are suspect because the employees who made them had improper motives. (Opp'n at 12–13.) Gomez allegedly made excessive complaints about everyone, Pavloff purportedly wanted the Plaintiff's job, and Sheehan was biased against Plaintiff because he was hired to replace him. (Opp'n at 12–13.) Even if true, none of these employee motives present any evidence of discrimination against Plaintiff based on a protected status. An employer can fire an employee for any reason or no reason at all, so long as that motive is non-discriminatory. *See Holtzclaw*, 795 F.Supp.2d at 1011. The FEHA does not protect Plaintiff from personality conflicts, jealousy, or resentment. None of the identified motives underlying the employee complaints could plausibly lead to the inference that Plaintiff's termination was based on his age or disability.

Moreover, Gomez, Pavloff, and Sheehan were not involved in the decision to terminate Plaintiff. Plaintiff provides no evidence from which a factfinder could impute his coworkers' illicit motives to his supervisors. "[P]laintiff's evidence must relate to the motivation of the decision makers to prove, by nonspeculative evidence, an actual causal link between prohibited motivation and termination." *King*, 152 Cal.App.4th at 433–34, 60 Cal. Rptr.3d 359. There is no evidence in the record from which one could infer a causal link between the employees' allegedly spiteful motivations and Ashley's age-or disability-based termination. *See id.* at 434, 60 Cal.Rptr.3d 359 ("But the animosity of coworkers, even if superior to plaintiff in rank or tenure, is not material to the sole issue contested by UPS. There is no evidence that Rogers, Murphy, or Zakoor participated in the decision to fire him. In

the absence of evidence that they were involved in the decision-making process, their feelings regarding plaintiff's performance have no bearing in the summary judgment proceedings, and their bitterness or mistreatment, if any, is not material to whether plaintiff was terminated because he was disabled.").

### iii. Mixed Motive

Although Plaintiff met his burden of demonstrating Defendants' reliance on excessive absenteeism was a pretext for discrimination, the Court finds Plaintiff fails to produce substantial evidence showing that the employee complaints were a pretext for allegedly Defendants' discriminatory termination. Thus, the Court is faced with a scenario where one basis for Plaintiff's termination is legitimate and nondiscriminatory, while the other could be found unworthy of credence such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.

 At the hearing, the Court asked whether the two reasons Defendants' cited for Plaintiff's termination—the employee complaints and the excessive absences—were independent causes of his discharge. Defendants refused to provide a concrete response. The *McDonnell Douglas* framework relied on by the parties "presupposes that the employer has a single reason for taking an adverse action against the employee and that the reason is either discriminatory or legitimate." *Harris v. City of Santa Monica,* 56 Cal.4th 203, 215, 152 Cal.Rptr.3d 392, 294 P.3d 49 (2013). Here, Defendants cite two reasons for Plaintiff's termination. If Defendants' two reasons are not alternate and independent, then this presents a case of mixed-motives. *Cf. Odima v. Westin Tucson Hotel Co.,* 991 F.2d 595, 600 (9th Cir.1993) ("[A]n employer articulates several alternative and independent legitimate nondis-

criminatory reasons, the falsity of one does not necessarily justify the finding that the remaining articulated reasons were pretextual.") (quotation omitted). A "mixed-motive" arises when a "mix of discriminatory and legitimate reasons motivated the employer's decision." *Harris,* 56 Cal.4th at 215, 152 Cal.Rptr.3d 392, 294 P.3d 49. Mixed motive is an affirmative defense to Plaintiff's disability discrimination claim and must be pled and proved by Defendants. *See id.* at 225, 152 Cal.Rptr.3d 392, 294 P.3d 49; BAJI 12–26. In such cases, a plaintiff may prevail on a FEHA claim by proving that "discrimination was a substantial factor motivating a particular employment decision," even if the decision was also based on non-discriminatory criteria. *Harris,* 56 Cal.4th at 232, 152 Cal. Rptr.3d 392, 294 P.3d 49. Then, the burden shifts to the employer to establish by a preponderance of the evidence that its legitimate reason, standing alone, would have induced it to make the same decision at the same time. BAJI 12–26. The parties did not brief this issue or discuss it at the hearing.

 As discussed above, the Court finds a reasonable jury could infer that Defendants' reliance on "excessive absenteeism" constituted discrimination on the basis of Plaintiff's disability. On the evidence presented, the Court is unable to find that Plaintiff's excessive absences were not a substantial factor motivating Plaintiff's termination. In addition, there is a triable issue as to whether Plaintiff's absences or the employee complaints were a substantial factor prompting his termination. *See Jadwin v. Cnty. of Kern,* 610 F.Supp.2d 1129, 1183 (E.D.Cal.2009) ("There is a triable issue as to whether it was Plaintiff's absence from work during his protected leaves under the FMLA/ CFRA, including his full-time leave, that prompted the removal decision, or whether

it was his continued unprotected absence *after* his protected leave expired which prompted the removal decision.").

Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's claim for disability discrimination under FEHA.

## B. Exempt Status

Defendants move for summary judgment on Plaintiff's fourth through ninth causes of action on the ground that Plaintiff is exempt from these laws pursuant to the administrative exemption. (Motion at 15–21.)

These claims for relief allege labor code and unfair competition violations for failure to pay overtime, waiting time penalties, interest on overtime, and failure to provide itemized statements. (Compl.¶¶ 69–100.) All of these claims are premised on the argument that Ashley improperly classified Plaintiff as an exempt employee who was not entitled to overtime and related requirements. (Opp'n at 13.) Defendants argue Plaintiff was properly classified as an administrative employee under California's Industrial Welfare Commission ("IWC") Wage Order No. 9. Cal. Code Regs. tit. 8, § 11090.

IWC Wage Order No. 9, which regulates wages, hours, and working conditions in California's transportation industry, exempts from overtime-pay requirements "persons employed in administrative, executive, or professional capacities." Cal. Code Regs. tit. 8, § 11090(1)(A); *see also* Cal. Lab.Code § 515(a) ("The Industrial Welfare Commission may establish exemptions from the requirement that an overtime rate of compensation be paid ... for executive, administrative, and professional employees, provided that the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and indepen-

dent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment.").

 The administrative exemption applies to any employee:

(a) Whose duties and responsibilities involve ...:

 (i) The performance of office or non-manual work directly related to management policies or general business operations of his employer or his/her employer's customers;

... and ...

(b) Who customarily and regularly exercises discretion and independent judgment; and

(c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity ...; or

(d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

(e) Who executes under only general supervision special assignments and tasks; and

(f) Who is primarily engaged in duties that meet the test of the exemption.

Cal.Code Regs. tit. 8, § 11090(1)(A)(2)(a)-(f). In addition, the employee must earn a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. *Id.* § 11090(1)(A)(2)(g). "The employer bears the burden of proving an employee is properly designated as exempt." *In re United Parcel Serv. Wage & Hour Cases,* 190 Cal.App.4th 1001, 1010, 118 Cal.Rptr.3d 834 (2010) [hereinafter *"In re UPS "*]. The question of whether Plaintiff is an exempt administrative employee presents a mixed question of law and fact. *Ramirez v. Yosemite Water Co.,* 20 Cal.4th

785, 85 Cal.Rptr.2d 844, 978 P.2d 2 (1999). The issue of what Plaintiff did as an employee for Defendants is a question of fact, while the precise scope of the exemption is a question of law. *Id.*

There is no dispute that Plaintiff earned more than two times the state minimum wage. (Opp'n at 16.) While Plaintiff contends that Ashley has not demonstrated any of the remaining requirements, he mainly disputes that he was "primarily engaged" in duties that "directly related to management policies or general business operations of his employer." (Opp'n at 13–16.) "Because the test is conjunctive, Plaintiff need only demonstrate that Defendants have not met their burden as to one part of the test." *Rieve v. Coventry Health Care, Inc.,* 870 F.Supp.2d 856, 869 (C.D.Cal.2012). The Court thus focuses on primarily engaged requirement.

The caselaw is clear that in order to prevail on its Motion, Ashley must establish that Plaintiff was "primarily engaged" in duties described in the exemption. "Primarily" is defined by the California Labor Code as "more than one-half of the employee's worktime." Cal. Labor Code § 515(e). The California Supreme Court described the method of determining whether work is exempt or nonexempt as "a purely quantitative approach." *Ramirez,* 20 Cal.4th at 797, 85 Cal.Rptr.2d 844, 978 P.2d 2; *see also Greko v. Diesel U.S.A., Inc.,* 277 F.R.D. 419, 423 (N.D.Cal. 2011).

It is undisputed that the duties and responsibilities of the Transportation Care Manager qualify for the administrative exemption. (Opp'n at 14; SGI ¶ 29.) Ashley contends it expected Plaintiff to primarily perform these duties "from the first day" he arrived at the Colton facility. (Mar-

tinez Decl. ¶¶ 6, 7, 12.) However, Plaintiff argues that he had not yet assumed the role for which he was hired, and performed other duties to prepare for his anticipated position while waiting for Sheehan to leave the company. (Opp'n at 13.) During Plaintiff's three-month employment,[17] he asserts he was primarily engaged in nonexempt duties including training, manual labor, clerical work, or "filling in the time." (McInteer Depo. 55:13–56:11; Opp'n at 14–16.)

Thus, the central issue raised is whether the Court should consider Defendants' expectations of Plaintiff's duties or the tasks Plaintiff actually performed to determine the duties in which he was primarily engaged. In order to ascertain Plaintiff's primary duties, "[t]he work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job ...." Cal.Code Regs. tit. 8, § 11090. Courts have frequently noted that the Court's "foremost" consideration in determining exempt status is "the actual job duties performed by that employee." *In re UPS,* 190 Cal.App.4th at 1014–15, 118 Cal.Rptr.3d 834; *see also Marlo v. United Parcel Serv., Inc.,* 639 F.3d 942, 948 (9th Cir.2011) ("[T]he Court must determine whether any given class members (or all the class members) spend more than 51% of their time on managerial tasks *in any given workweek.*") (internal quotation omitted). Thus, both the employer's expectations and the employee's actual tasks must be considered by the Court, but particular emphasis is given to the employee's

---

**17.** Although Plaintiff was actually employed by Ashley for four months, he did not come into work for the final month of his employment. The Court does not consider the time Plaintiff was absent in determining his exempt status.

actual activities while employed.[18]

In order to navigate this tricky balancing between expectations and actual performance, the California Supreme Court directs courts to "inquir[e] into the realistic requirements of the job." *Ramirez*, 20 Cal.4th at 802, 85 Cal.Rptr.2d 844, 978 P.2d 2. "In other words, an employer cannot rely on an idealized job description and the employee cannot claim he was nonexempt based on his own substandard performance." *Greko*, 277 F.R.D. at 423.

Here, there is a substantial disparity between Ashley's expectations of Plaintiff and Plaintiff's actual activities while employed. In his deposition, Plaintiff testified that he spent between 20 to 45 percent of his time on clerical billing work, which would not fall under the administrative exemption. (McInteer Depo. 42:25–44:1.) Ashley's expectations of Plaintiff did not include any billing work. (Martinez Decl. ¶¶ 7, 12.) Similarly, Plaintiff testified that he spent up to 50 percent of his time observing and performing manual tasks in the warehouse, on the trucks, and in the yard and dock. (*Id.* 44:2–46:24.) Ashley's expectations did not include any manual labor or direct work with trucks or shipping. (Martinez Decl. ¶¶ 7, 12.)

Instead, Ashley expected Plaintiff would take on a supervisory role over the clerical staff and drivers. (*Id.*) It further anticipated Plaintiff would observe, evaluate, and analyze transportation operations and personnel in the facility in order to provide recommendations to improve efficiencies and implement improvements. (*Id.*) However, there is no evidence that Plaintiff actually performed any evaluations or analysis, made any recommendations or improvements, or acted as a supervisor to other staff.

The discrepancy between Ashley's expectations and Plaintiff's activities appears to stem primarily from the fact that Plaintiff was in training during his three-month employment.[19] (McInteer Depo. 45:13–21.) Although Martinez testified that Ashley expected McInteer to take on management tasks as soon as he joined the company, Martinez also acknowledges that Plaintiff was not expected to "have a full grasp of the personnel and operations at the Colton facility" until after he became the sole Transportation Care Manager. (Martinez Decl. ¶¶ 6, 11–12.) This acknowledgement appears to be in conformity with Plaintiff's understanding. Plaintiff testified that the purpose of his nonexempt tasks were to enable him to learn as much as he could about the operation in order to perform his exempt management role once Sheehan left. (McInteer Depo. 44:11–45:5.) In accordance with Martinez and Plaintiff's testimony, the Court finds that the "realistic requirements" of Plaintiff's position necessitated that he undergo training in the clerical, shipping, and transportation de-

---

18. At the hearing, Defendants incorrectly argued that they could prove the exemption applied either by showing the duties Plaintiff actually performed or by establishing the employer's realistic expectations. Both the language of Wage Order No. 9 and caselaw make clear that is not the law.

19. Given the substantial discrepancy between the expected duties and Plaintiff's actual performance, one would assume Ashley would have reprimanded Plaintiff or cited his deficient performance as a basis for his termi-

nation. Ashley did not so cite either in this litigation or in its termination letter. *See Ramirez*, 20 Cal.4th at 802, 85 Cal.Rptr.2d 844, 978 P.2d 2 (stating that, in determining the "realistic requirements" of a job, a trial court should consider "whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job").

partments prior to using his discretion and judgment to effect the policies or operations in these departments.[20] *Ramirez*, 20 Cal.4th at 802, 85 Cal.Rptr.2d 844, 978 P.2d 2.

To the extent that Defendants contend that Plaintiff was not "primarily" in training during his three-month employment (Reply at 8), Plaintiff presents evidence to dispute this material fact. (McInteer Depo. 45:6–21.) Taking the facts in the light most favorable to Plaintiff, his training included several nonexempt activities, including clerical work, manual labor in the yard and on the docks, working with machines and equipment, and substantial time spent observing operations and person-. nel.[21] (*Id.* 28:22–25, 44:2–45:25.) There is evidence from which a jury could conclude that these tasks consumed more than half of the time Ashley employed Plaintiff.[22] (*Id.* 42:25–46:24; Opp'n at 16.) The Court cannot conclude that these tasks were "directly related to management operations or general business operations." Cal.Code Regs. tit. 8, § 11090(1)(A)(2)(a)(i). Because there are genuine issues of fact regarding Plaintiff's daily activities and the

---

20. Defendants admit that at the outset of his employment, "Plaintiff necessarily had to learn and understand the various functions and observe the personnel at Ashley's Colton facility." (Reply at 8.)

21. Defendants argue they "did not expect or instruct Plaintiff" to perform nonexempt tasks for more than half of his work time. (Reply at 8.) As discussed, the Court's foremost consideration is the work actually performed by the employee during the course of the workweek, not Defendants' expectations. Insofar as Defendants argue that the first three months of Plaintiff's position did not realistically require that a majority of his time be spent on nonexempt tasks, Defendants have not presented any evidence on such requirements. Defendants provide no evidence on the training required for the Transportation Care Manager position or on the direction or instruction Plaintiff received from his supervisors during his employment. Defendants thus have not met their burden of establishing that Plaintiff's three-month position realistically required him to spend at least half of his time on exempt tasks. *See Ramirez*, 20 Cal.4th at 802, 85 Cal.Rptr.2d 844, 978 P.2d 2 (stating that a trial court should consider "whether the employee's practice diverges from the employer's realistic expectations").

At the hearing on this Motion, Defendants frequently argued that Plaintiff lacked evidence regarding Defendants' realistic expectation that Plaintiff would be performing exempt work more than 50 percent of the time. The administrative exemption is an affirmative defense that must be pled and proved by Defendants; therefore, on summary judg-

ment, Defendants must present uncontroverted evidence that would entitle it to prevail. *See UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir.1994). Defendants presented no evidence demonstrating its expectations were reasonable, and Plaintiff provided evidence of his actual duties to counter Defendants' stated expectations. Thus, Defendants have not met their burden.

22. Plaintiff admits that beginning in about his second month on the job, he spent approximately 40 to 50 percent of his work hours "filling in the time" and "looking to stay busy." (McInteer Depo. 55:13–56:11.) Defendants argue that "an employee who is supposed to be engaged in [exempt] activities during most of his working hours and falls below the 50 percent mark due to his own substandard performance should not thereby be able to evade a valid exemption." *Ramirez*, 20 Cal.4th at 802, 85 Cal.Rptr.2d 844, 978 P.2d 2. (Motion at 2, 20.) The Court agrees that time Plaintiff spent on activities which contravened Ashley's realistic requirements cannot be counted. However, at best Plaintiff's testimony is unclear as to the activities he completed, if any, while filling time and looking to stay busy. It is also unclear whether these activities constituted more than half of his time during the course of a workweek. Given the lack of clarity in Plaintiff's testimony, the Court cannot find that Defendants met their burden of demonstrating that Plaintiff was realistically required to be engaged in exempt activities for more than 50 percent of the time, but failed to do so based on his own incompetence. This is a matter properly decided by the finder of fact.

nonexempt tasks realistically required to complete Plaintiff's first three months on the job, the Court finds the state law claims for wage and hour violations survive summary judgment.

In addition, Wage Order No. 9 expressly provides that "activities constituting exempt work and nonexempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201–205, 541.207–208, 541.210, and 541.215." Cal.Code Regs., tit. 8, § 11090(1)(A)(f). The effective date of Wage Order No. 9 was January 1, 2001. *In re UPS*, 190 Cal.App.4th at 1015, 118 Cal.Rptr.3d 834. As such, the Court may properly consider the federal Department of Labor's implementing regulations as set forth in the Code of Federal Regulations that were in effect as of January 1, 2001. *See id.* at 1015, 1028, 118 Cal.Rptr.3d 834.

As of January 1, 2001, 29 C.F.R. § 541.210, which is incorporated into the administrative exemption under Wage Order No. 9, stated that the exemption "does not include employees training for employment in an administrative capacity who are not actually performing the duties of an administrative employee." 29 C.F.R. § 541.210 (2001), *available at* http://www.gpo.gov/fdsys/pkg/CFR–2001–title29–vol3/pdf/CFR–2001–title29–vol3–sec541–210.pdf; *see also Herrera v. F.H. Paschen/S.N. Nielsen, Inc.*, No. D051369, 2008 WL 5207359, at *4 n. 8 (Cal.Ct.App. Dec. 15, 2008). Viewed in the light most favorable to Plaintiff, the facts could lead a reasonable factfinder to conclude that Plaintiff was primarily engaged in training to become Transportation Care Manager, but he was not actually performing the nonexempt duties incumbent in that position. Under 29 C.F.R. § 541.210, as incor-

porated into the state law administrative exemption, there is a triable issue of fact as to whether Plaintiff's training could constitutes nonexempt work.

Plaintiff demonstrated a genuine dispute exists as to whether he fell under the administrative exemption during his employment at Ashley. Accordingly, the Court DENIES Defendants' motion for summary judgment on causes of action numbered four through nine.

## C. Waiting Time Penalties

In a footnote, Ashley argues that even if Plaintiff was a nonexempt employee, his fifth claim for waiting time penalties under California Labor Code Section 203 must fail because he cannot prove that Ashley willfully failed to pay him all wages due. (Motion at 21 n. 9.) A " 'good faith dispute' that any wages are due will preclude imposition of waiting time penalties...." Cal. Code Regs. tit. 8, § 13520.

In the Court's view, Ashley cannot carry its burden on summary judgment simply by asserting in a conclusory fashion that it acted under a good faith belief that Plaintiff was exempt. The presence or absence of a good faith belief on Ashley's part is a factual question that must be resolved at trial. Ashley is not entitled to summary judgment the fifth cause of action. *See Takacs v. A.G. Edwards & Sons, Inc.*, 444 F.Supp.2d 1100, 1125–27 (S.D.Cal.2006); *Lopez v. United Parcel Service, Inc.*, No. C08–05396, 2010 WL 728205, at *9 (N.D.Cal. March 1, 2010).

## D. Intentional Infliction of Emotional Distress

Defendants argue that the Workers' Compensation Act ("WCA"), Cal. Lab. Code § 3602, preempts Plaintiff's eleventh cause of action for intentional infliction of emotional distress ("IIED"). (Motion at 23–24.) The IIED claim is entirely prem-

ised on Defendants' actions leading up to and including Plaintiff's termination. (Compl. ¶¶ 114–119.)

■ The California Supreme Court has clarified that where the alleged unlawful conduct occurs at the worksite in the normal course of an employer-employee relationship, worker's compensation is the exclusive remedy for any injury that results. *Miklosy v. Regents of the Univ. of Cal.*, 44 Cal.4th 876, 902–03, 80 Cal.Rptr.3d 690, 188 P.3d 629 (2008). While a wrongful termination claim is not preempted by the worker's compensation exclusive remedy rule, an intentional infliction of emotional distress claim premised on termination is preempted. *See Smith v. Lowe's Hiw, Inc.*, No. 2:13–CV–1713 WBS AC, 2014 WL 1419655, at *5–6 (E.D.Cal. Apr. 14, 2014).

The Court therefore GRANTS summary judgment on Plaintiff's eleventh claim.

### E. Punitive Damages

■ Under California law, punitive damages may be appropriate "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.Code § 3294. Punitive damages are recoverable for FEHA violations. *Yeager v. Corr. Corp. of Am.*, 944 F.Supp.2d 913, 931 (E.D.Cal.2013); *Commodore Home Systems, Inc. v. Superior Court*, 32 Cal.3d 211, 220, 221, 185 Cal.Rptr. 270, 649 P.2d 912 (1982). Under FEHA, "[b]ecause Defendant is a corporation, the evidence must demonstrate an officer, director or managing agent of Defendant committed, authorized or ratified an act of malice, oppression or fraud to create a genuine issue of material fact on punitive damages." *Yeager*, 944 F.Supp.2d at 931.

■ A review of the record indicates that a reasonable trier of fact could conclude that managing agents of Ashley, namely Leighty and Qualman, were involved in the decision to terminate Plaintiff. Plaintiff has also presented evidence that her supervisors acted with deliberate indifference by unilaterally terminating him without explanation or advanced notice and ignoring his medical condition.

Because Plaintiff's FEHA claim for disability discrimination survives summary judgment, the Court finds it would be premature to dismiss his request for punitive damages. Accordingly, the Court DENIES summary judgment on Plaintiff's prayer for punitive damages.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment. The Court DISMISSES WITH PREJUDICE Plaintiff's first cause of action for age discrimination and eleventh cause of action for intentional infliction of emotional distress. Pursuant to Plaintiff's request, the Court also DISMISSES WITH PREJUDICE Plaintiff's third and tenth causes of action for violation of Cal. Lab.Code § 132(a) and for defamation. The Court DENIES summary judgment on claims two and four through nine.